COMMISSION ON JUDICIAL DISCIPLINE AND
DISABILITY and James Badami, Its Director *v.* Tom
DIGBY, Circuit Judge

90-143                                              792 S.W.2d 594

Supreme Court of Arkansas
Opinion delivered July 9, 1990

*Steve Clark*, Att'y Gen., by: *Thomas S. Gay*, Deputy Att'y Gen., for appellant.

*Rose Law Firm, A Professional Association*, by: *Phillip Carroll*, for Gannett River States Publishing Company.

DAVID NEWBERN, Justice. A writ of prohibition is sought to prevent the Pulaski County Circuit Court from entertaining a declaratory judgment action. The action was filed by Gannett River States Publishing Company (Gannett) against the Judicial Discipline and Disability Commission and James Badami, director of the commission. The action was for a declaratory judgment to the effect that the commission is required to release to the public information from its files compiled prior to the May 14, 1990, order of this court which amended the commission's rules to provide guidance with respect to release of information. Because we are moving in an uncharted area of Arkansas law, we declined to decide the prohibition issue on the basis of the argument submitted with the motion. We asked for further briefing on whether the commission could be sued and, if so, the proper procedure.

The primary issue we decide today is whether the circuit court has authority to entertain the declaratory judgment action against the commission. Our holding is that the circuit court should decide the question whether the records sought by Gannett are to be released. Should the question come to this court, it will be in a future appeal from the circuit court's decision and not by an original action or petition for mandamus filed in this court.

The commission argues the circuit court may not entertain the declaratory judgment action because it is an action against the state which is immune from suit. It is also argued that, because the commission is but an arm of this court, we have the power to supervise the commission and, therefore, the circuit court lacks jurisdiction. We reject both arguments and deny the writ except to the extent that the declaratory judgment action seeks costs and expenses.

## 1. Sovereign immunity

There is no question that the commission is an agency of the state. Generally, state agencies are immune from suit in the state's courts. Ark. Const. art. 5, § 20; *Fireman's Ins. Co. v. Arkansas State Claims Comm.*, 301 Ark. 451, 784 S.W.2d 771 (1990). There are, however, exceptions to that rule. If the state agency is acting illegally or if a state officer refuses to do a purely ministerial act required by statute, an action against the agency or officer is not prohibited. *Federal Compress & Warehouse Co. v. Call*, 221 Ark. 537, 254 S.W.2d 319 (1953). *See Hickenbottom v. McCain*, 207 Ark. 485, 181 S.W.2d 226 (1944). These cases indicate one consideration to be that if the state would be under no obligation, meaning financial obligation, even if the plaintiff prevails, the action is not one against the state. In the circuit court, Gannett sought costs and expenses. In its petition before us, Gannett has waived that monetary claim. Gannett has also conceded that Mr. Badami is not a necessary defendant in the case, and so Mr. Badami's clear statutory immunity provided by Ark. Code Ann. § 16-10-406 (Supp. 1989) will not pose a problem in the circuit court.

We hold that, to the extent this is a suit against the commission, seeking only a declaration whether the commission, acting through its director, has acted in violation of Rule 7 of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission, promulgated by *per curiam* order of May 14, 1990, it is not barred by the sovereign immunity provision of Ark. Const. art. 5, § 20.

## 2. Proper procedure

In support of its contention that it is only an arm of this court, and thus subject only to our supervisory powers, the commission cites Ark. Const. art. 7, § 4:

> The Supreme Court, except in cases otherwise provided by this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the State, under such restrictions as may from time to time be prescribed by law. It shall have a general superintending control over all inferior courts of law and equity; and, in aid of its appellate and supervisory jurisdiction, it shall have power to issue

writs of error and supersedeas, certiorari, habeas corpus, prohibition, mandamus and quo warranto, and, other remedial writs, and to hear and determine the same. Its judges shall be conservators of the peace throughout the State, and shall severally have power to issue any of the aforesaid writs.

Power is thus given to the supreme court to supervise the lower courts, but nothing is said about supervision of an agency such as the commission. Amendment 66 which created the commission provided that it was established "[u]nder the judicial power of the [s]tate," and empowered the supreme court to prescribe the procedural rules, but no general authority was conferred on this court to supervise the commission. Subsection (c) of the amendment provided appellate jurisdiction in the supreme court of the commission's decisions, and it provided the supreme court may take action on the basis of recommendations by the commission, but no general supervisory power was given to the supreme court. By Rule 12.F. of the commission's rules of procedure, this court has provided that it may bring before it any action or failure to act on the part of the commission with respect to a case before the commission. That provision, like the appeal provisions, has to do with reviewing the commission's actions in deciding the cases before it, and it is not indicative of a general supervisory power in the supreme court.

In support of its argument that the commission is an arm of the supreme court created to assist the supreme court in its supervision of the lower courts the commission cites *Sexton* v. *Supreme Court Committee on Professional Conduct*, 297 Ark. 154A, 760 S.W.2d 69 (1988), and *Walker* v. *Supreme Court Committee on Professional Conduct*, 275 Ark. 117, 628 S.W.2d 552 (1982). Those cases dealt with the Arkansas Supreme Court Committee on Professional Conduct which this court created to assist it in exercising its power to regulate the practice of law and the professional conduct of attorneys pursuant to Ark. Const. amend. 28. They present no authority for dealing with a commission created by the constitution.

The commission also cites cases from other jurisdictions in which it has been said that a judicial discipline commission is an arm of the supreme court. That was an *obiter dictum* in *In re*

*Inquiry Concerning a Judge, Herbert W. Hardy*, 294 N.C. 90, 240 S.E.2d 367 (1978), but the opinion in that case revealed that the North Carolina Constitution required the legislature of that state to create a procedure for censure and removal of judges. The commission was created by the legislature of that state and not directly by constitutional amendment. Nor do we regard the court's statement that the commission is an arm of the court as necessarily meaning that the North Carolina Supreme Court had exclusive powers with respect to the commission. That was not the holding of the case.

In *McKenney* v. *Commission on Judicial Conduct*, 388 N.E.2d 666 (Mass. 1979), a judge sought injunction in a trial court and, at the same time, in the Supreme Judicial Court of Massachusetts against the commission, alleging improprieties in a complaint filed against him with the commission. The trial court action was withdrawn, and the supreme judicial court dealt with the questions presented as an interlocutory appeal with the admonition that it would disfavor doing so in future cases. The opinion pointed out that the power of the commission was entirely statutory. The court dealt with a matter it might eventually have to decide on review of a case before the commission and did not purport to supervise administrative aspects of the commission.

A Wisconsin case cited by the commission does not apply here because the court was dealing with a commission created by the court rather than by constitutional amendment. *State* v. *Dancey*, 238 N.W.2d 81 (Wisc. 1976).

In *Snyder* v. *Judicial Inquiry and Review Board*, 471 A.2d 1287 (Penn. Cmwlth. 1984), also cited by the commission, a member of the commonwealth court, acting as chancellor, refused to enjoin proceedings before the board. He held that to do so would interfere with the exclusive authority of the Pennsylvania Supreme Court which had supervisory power over the board to the exclusion of other courts. As far as we know, the decision was not appealed, and we have no idea how the case was handled upon transfer to the Pennsylvania Supreme Court.

Perhaps the strongest language supporting the commission's argument comes from the Supreme Court of Iowa. In *Welty* v. *McMahon*, 316 N.W.2d 836 (Ia. 1982), the issue was whether the supreme court could entertain a declaratory judgment peti-

tion concerning the composition of a judicial nominating commission. The court construed its constitutionally granted supervisory power over the other Iowa courts as being sufficient to permit it to act with respect to the commission. The language of the opinion is, to say the least, expansive. Quoting from an earlier opinion the court wrote:

> The superintending control is hampered by no specific rules or means of its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. [316 N.W.2d at 838]

Unlike the Iowa court, we are not inclined to act beyond the limits of the authority we are given in art. 7 and amend. 66 of the Arkansas Constitution.

▮▮▮▮ The commission recognizes we have held our original jurisdiction to be limited to that granted by the constitution and that our authority cannot be enlarged by the general assembly. *American Party of Arkansas* v. *Brandon*, 253 Ark. 123, 484 S.W.2d 881 (1972). Absent a provision for exclusive jurisdiction of a particular matter in this or some other court, jurisdiction to hear civil or criminal cases lies in the circuit court. Ark. Const. art 7, § 11.

▮▮▮ The Arkansas Commission on Judicial Discipline and Disability is a constitutional entity separate from this court. Independent constitutional agencies, such as the State Highway Commission (Ark. Const. amend. 42) and the Arkansas State Game and Fish Commission (Ark. Const. amend. 35) have historically been subjected to the authority of the trial courts of this state when there have been allegations of illegal action not barred by sovereign immunity. Where the remedy sought was exclusively cognizable in equity, such as an injunction, the chancery courts have exercised jurisdiction. *See, e.g., Magruder* v. *Arkansas Game & Fish Comm.*, 293 Ark. 39, 732 S.W.2d 849 (1987). Otherwise, the circuit courts have acted. *See, e.g., Arkansas State Highway Comm.* v. *Woods*, 264 Ark. 425, 572 S.W.2d 425 (1978).

The petition for a writ of prohibition is granted with respect to any claims against the commission for costs or expenses and with respect to any claim against James Badami individually. Otherwise, the petition for a writ of prohibition is denied.